UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

**FILED**
2017 FEB 24 PM 12 07
U.S. DISTRICT COURT

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | MISC. NO. 3:17mj217(SALM)<br><br>**Filed Under Seal** |

APPLICATION OF THE UNITED STATES
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require AT&T, a cellular service provider located in Dallas, Texas, and Sprint, a cellular service provider located in Overland Park, Kansas, to disclose certain records and other information pertaining to the phone numbers (860) 806-2748 (AT&T) and (860) 689-6508 (Sprint), as described in Part I of Attachment A. The records and other information to be disclosed are described in Part II of Attachment A to the proposed Order. In support of this application, the United States asserts:

LEGAL BACKGROUND

1. Both AT&T and Sprint are providers of an electronic communications service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2). Accordingly, the United States may use a court order issued under § 2703(d) to require AT&T and Sprint to disclose the items described in Part II of Attachment A. *See* 18 U.S.C. § 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(d). Specifically,

the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## THE RELEVANT FACTS

4. The United States is investigating the death of a 28-year-old victim who died after ingesting a lethal amount of ethanol, cocaine, and fentanyl on December 16, 2016. The investigation concerns possible violations of, *inter alia*, Title 21, United States Code, Section 841(a) (possession with intent to distribute and distribution of narcotics).

5. The following facts are based on information and belief, the source of which is police reports and information learned by Special Agents of the Drug Enforcement Agency and local police officers with whom they are coordinating on this investigation.

6. On December 16, 2016, at approximately 1:38 a.m., officers of the Torrington Police Department and emergency medical response personnel were called to a Torrington residence to attend to an unresponsive male. A paramedic administered two doses of Narcan, a medicine that can in some cases reverse the effects of drug overdoses of various types. The paramedics were unable to revive the victim and he was transferred to a hospital. Physicians at the hospital examined the victim and informed police that the victim's presumed time of death

was 2:10 a.m. on December 16, 2016. On January 16, 2017, the medical examiner reported that the cause of death was acute intoxication caused by ethanol, cocaine, and fentanyl.

7. The victim's girlfriend was interviewed about the series of events that led to the victim's death. She stated that on the evening prior to the victim's death, the victim said that he had done one line of cocaine at a bar around 9:30 p.m. The victim wanted to do more cocaine but could not get any from his friends. The victim's girlfriend then called an individual named Benjamin HACKER, with whom she had done cocaine in the past. The victim's girlfriend used her cellular phone, bearing phone number (860) 689-6508, to send a text message to HACKER at his number, which was (860) 806-2748. The two sent text messages back and forth, with the girlfriend asking for $40-$80 worth of cocaine and a few Percocet pills. Toward the end of the text message conversation, HACKER called the victim's girlfriend and said he would drop by to pick up the money and then go get the drugs. HACKER came over to the girlfriend's house, took more than $80 from the victim, and then left.

8. HACKER returned to the house approximately 10-15 minutes later with cocaine and two Percocet pills. HACKER, the victim, and the victim's girlfriend ingested the cocaine after spreading it on the kitchen counter using a $20 bill and a credit card. After the cocaine, the victim and the girlfriend each took one Percocet pill. HACKER and another individual who had come to the house with him stayed for approximately 30 minutes.

9. While HACKER was still at the house, the victim suddenly passed out and dropped to the floor. HACKER wanted to leave when the victim passed out. The girlfriend noticed that the victim was breathing, so she said she would get him to bed. HACKER then left the house. After ten minutes or so, the girlfriend, from (860) 689-6508, called HACKER at (860) 806-2748 and told him that she could not get the victim to respond. HACKER then called

the girlfriend via the FaceTime application and came back to the house. About the same time that HACKER arrived at the house, the girlfriend called for an ambulance. The victim was not breathing at this point. The girlfriend and HACKER performed CPR on him at the house before the ambulance arrived.

10. In mid-January 2017, officers of the Torrington Police Department attempted to call HACKER at (860) 806-2748 multiple times. HACKER would not answer the phone and there was no option to leave a voicemail message. An officer also sent a text message to HACKER at (860) 806-2748, but did not receive a response.

11. Historical cell site information for (860) 689-6508, the victim's girlfriend's phone number, and (860) 806-2748, HACKER's phone number, will assist law enforcement agents in determining whether the phones associated with the two numbers were located near each other near the time of the overdose and at other times in the preceding days.

## REQUEST FOR ORDER

12. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the events described above, and to determine the nature and scope of their activities. Accordingly, the United States requests that AT&T and Sprint be directed to produce all items described in Part II of Attachment A to the proposed Order.

13. The United States further requests that the Order require AT&T and Sprint not to notify any person, including the subscribers or customers of the account(s) listed in Part I of Attachment A, of the existence of the Order until further order of the Court. *See* 18 U.S.C. §

2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.* In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

14. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

*/s/ Sar. ryl*

SARALA V. NAGALA
FEDERAL BAR NO. phv05529
157 CHURCH STREET, 25TH FLOOR
NEW HAVEN, CT 06510

(203) 821-3700
Sarala.Nagala@usdoj.gov

# ATTACHMENT A

**I.     The Account(s)**

The Order applies to certain records and information associated with the following phone numbers:  (860) 806-2748 (AT&T) and (860) 689-6508 (Sprint).

**II.    Records and Other Information to Be Disclosed**

AT&T and Sprint is required to disclose the following records and other information, if available, to the United States for each account or identifier listed in Part I of this Attachment ("Account"), for the time period between December 15, 2016, and December 17, 2016:

    A.    The following information about the customers or subscribers of the Account:

1. Names (including subscriber names, user names, and screen names);
2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
3. Local and long distance telephone connection records;
4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
5. Length of service (including start date) and types of service utilized;
6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));
7. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and
8. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.  All records and other information (not including the contents of communications) relating to the Account, including:

1. Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

3. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account.